NATIONAL WILDLIFE FEDERATION, Washington State Sportsmen's Council, Rose City Ratepayers Association, Terry Anderson, Lee Ann Ward, Daniel Morin, Plaintiffs,

v.

Peter JOHNSON, Administrator, Bonneville Power Administration, United States Department of Energy, Defendant.

FORELAWS ON BOARD, an unincorporated association; and Lloyd Marbet, Plaintiffs,

v.

Peter T. JOHNSON, as Administrator of the Bonneville Power Administration, Department of Energy, James Edwards, as Secretary of the Department of Energy of the United States of America, Defendants.

Civ. Nos. 81–1097–RE, 81–916–RE.

United States District Court, D. Oregon.

March 10, 1982.

John E. Bonine, Terence L. Thatcher, Eugene, Or., Elliot Holden, Gregory Kafoury, James Lang, Portland, Or., for plaintiffs.

Sidney I. Lezak, U. S. Atty., Jack G. Collins, First Asst. U. S. Atty., Thomas C. Lee, Asst. U.S. Atty., Robert E. Ratcliffe, Harvard P. Spigal, James O. Luce, Thomas D. Miller, Sp. Asst. U. S. Attys., Bonneville Power Administration, Portland, Or., for defendants.

REDDEN, District Judge:

These plaintiffs have filed suit against the Administrator of the Bonneville Power Administration (BPA), the Secretary of the Department of Energy and the United States of America. The suits are brought pursuant to the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, and challenge the action of the administrator in executing long-term power contracts. The contracts were entered into pursuant to the Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. § 839 *et seq.* (the Regional Act). The defendants move to dismiss both suits, insisting that such suits must be ". . . filed in the United States court of appeals for the region," pursuant to § 839f(e)(5) of the Act. The parties agree that the proper forum is directed by § 839f(e)(5) but each read that section differently.

That section reads:

(5) Suits to challenge the constitutionality of this chapter, or any action thereunder, final actions and decisions taken pursuant to this chapter by the Administrator or the Council, or the implementation of such final actions, whether brought pursuant to this chapter, the Bonneville Project Act, the Act of August 31, 1964, or the Federal Columbia River Transmission System Act, shall be filed in the United States court of appeals for the region. Such suits shall be filed within ninety days of the time such action or decision is deemed final, or, if notice of the action is required by this chapter to be published in the Federal Register, within ninety days from such notice, or be barred. In the case of a challenge of the plan or programs or amendments thereto, such suit shall be

filed within sixty days after publication of a notice of such final action in the Federal Register. Such court shall have jurisdiction to hear and determine any suit brought as provided in this section. The plan and program, as finally adopted or portions thereof, or amendments thereto, shall not thereafter be reviewable as a part of any other action under this chapter or any other law. Suits challenging any other actions under this chapter shall be filed in the appropriate court.

16 U.S.C. § 839f(e)(5).

Defendants point out that both suits "challenge . . . final actions and decisions . . . by the administrator," and, therefore, must be filed in the United States court of appeals. Plaintiffs claim that the suits which must be so filed are those "brought pursuant to this chapter, the Bonneville Project Act, the Act of August 31, 1964, or the Federal Columbia River Transmission System Act" and that these suits are brought pursuant to NEPA an act not enumerated. Defendants also find comfort in the last sentence of the section: "Suits challenging any other actions under this chapter shall be filed in the appropriate court."

The parties point to the wording of the section, claiming it clearly upholds their position, but say that if it does not then reliance upon legislative intent certainly does. The defendants also point to the problem inherent in bifurcated jurisdiction and claim that this disfavored result also aids their argument. I agree with the defendants. It is, of course, within the power of Congress to determine the forum, *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345 (1958); *see also Adamo Wrecking Co. v. U. S.,* 434 U.S. 275, at 280–284, 98 S.Ct. 566, at 570–572, 54 L.Ed.2d 538 (1978). It was the intent of Congress to expedite the litigation they knew would follow passage of and actions under this act.[1] If the suit, in fact, chal-

1. Cong.Rec., Nov. 17, 1980, at H10686 (Comments of Cong. Dingell); H.Rpt. No. 96–976, Part II, 96th Cong., 2d Sess., at 30–31, U.S. Code Cong. & Admin.News 1980, p. 5989.

710

lenges "final actions" it should be expedited as directed by Congress. That the challenge is filed pursuant to NEPA should not frustrate that clear intent.

I am also persuaded that the disadvantages inherent in a system of bifurcated jurisdiction must have great weight in the decision of this issue.

The Supreme Court recently addressed a somewhat analogous problem in *Crown Simpson Pulp Company v. Costle,* 445 U.S. 193, 100 S.Ct. 1093, 63 L.Ed.2d 312 (1980). In *Crown Simpson,* the issue was whether the Court of Appeals had jurisdiction over a direct review of EPA's action in denying certain effluent discharge variances granted by the California State Water Resources Control Board. The Ninth Circuit dismissed the appeal for want of direct-review jurisdiction, and the Supreme Court reversed:

> We ... hold that the Court of appeals had jurisdiction over this action.... Under the contrary construction of the Court of Appeals, denials of NPDES permits would be reviewable at different levels of the federal court system depending on the fortuitous circumstances of whether the State in which the case arose was or was not authorized to issue permits. Moreover, the additional level of judicial review in those states with permit-issuing authority would likely cause delays in resolving disputes under the Act. *Absent a far clearer expression of congressional intent, we are unwilling to read the Act as creating such a seemingly irrational bifurcated system.* (Emphasis added, footnotes omitted).

100 S.Ct. 1094–1095.

The facts of *Crown Simpson* are not in point, but it is instructive. If plaintiffs are correct here, the BPA's actions in executing power contracts would be reviewable in district court when challenged under NEPA, and in the United States court of appeals if challenged on certain other grounds. This would delay dispute resolution and would result in an irrational bifurcated system.

These suits are dismissed.